IzWATKINS, Judge.
Plaintiff-appellants, Channing F. Hayden, Jr., George Duffy, Richard E. Manchester, and the New Orleans Steamship Association, appeal the dismissal of their petition for judicial review of a decision of the New Orleans-Baton Rouge Steamship Pilots Fee Commission (NOBR) increasing river port pilot rates. The trial court denied plaintiffs judicial review.
*1387 BACKGROUND
Since colonial days, river pilots have performed pilot services for the passage of ships through the entrances of the Mississippi River and up through and including the port of New Orleans, Louisiana. The essential need for regulation of pilot services was recognized in 1837 when the legislature first imposed regulations on the pilots. The legislature has established three bodies of pilots which have the exclusive right to provide pilotage services to vessels subject to pilot-age from the time they enter the Mississippi River from the Gulf of Mexico until they reach the port of Baton Rouge, Louisiana. Bar pilots have the exclusive right to provide services from in the Mississippi River between Pilot Town, Louisiana, and the Gulf of Mexico.[1] LSA-R.S. 34:943. River port pilots, commonly referred to as Crescent Pilots, service vessels between Pilot Town, Louisiana, and New Orleans, Louisiana. LSA-R.S. 34:996. And NOBRA (New Orleans Baton Rouge Association) pilots have the exclusive right to provide pilot services between New Orleans, Louisiana, and Baton Rouge, Louisiana. LSA-R.S. 34:1043. The three bodies of pilots each formed a pilot association as provided for in' LSA-R.S. 34:944, 34:995 and 34:1047. The associations regulate the working conditions of the pilots by providing the rules and regulations for such things as vacations, sick leave and rest time.
Pilots are appointed at the discretion of the governor after examination and certification by the respective board of examiners or board of commissioners for each body of pilots. LSA-R.S. 34:945, 993, 1045. Originally, fees that the pilots were permitted to charge for their services were regulated by statute. See repealed provisions in LSA-R.S. 34:997-999. In 1968, the legislature created pilot fee commissions, giving these commissions the authority 18to fix rates and fees for pilot services. LSA-R.S. 34:1121. The members of fee commissions are appointed by the governor pursuant to LSA-R.S. 34:1121 which requires that each commission be comprised of eight members and eight alternates to represent the respective interests of the pilot associations and the steamship industry. Accordingly, each fee commission is comprised of four members and four alternates from the pilot association and four members and four alternates from the steamship industry. Each fee commission “shall have exclusive authority to fix and establish reasonable and just fees and rates.” LSA-R.S. 34:1122. However, the fee commissions’ determinations of rates are governed by LSA-R.S. 34:1122 B. and C. which provide:
B. Pilotage fees and rates shall provide for all ordinary and necessary operating and administrative costs and expenses, including, but not limited to, the cost of, replacement of, and reasonable return on investment of pilot stations, administrative offices, furniture and fixtures, communication equipment and facilities, vessels, launches and other required vehicles of transportation and the expenses of maintaining and repairing same, other transportation expenses, the expense of maintaining necessary employees, operating materials, consumables and services, pensions, pension plans, hospitalization, disability compensation, taxes and licenses, life insurance, license insurance, trade promotions, public relations, legal expense, accounting expense, professional dues, administrative and professional publications, state pilot commissions, state and federal requirements, and fair average annual compensation for a state ship pilot, in comparison to regulated state ship pilotage in other United States ports.
C. (1) In determining such fees and rates, individual pilotage fee commissions may give due regard to, but shall not be limited to:
(a) Consideration of the length, draft, dimensions, and tonnage of the vessels to be piloted.
(b) The difficulty and inconvenience of the particular service and the skill and additional expertise required to render it.
*1388 (c) The public interest in maintaining safe, efficient, and reliable pilotage service.
(d) The piloting time required; the distance traveled of the vessels to be serviced; the travel time required and distance traveled to and from vessels; the method of travel and travel cost required to and from vessels; the time devoted by pilots to making themselves available when needed; the time required to be on station or on call while both on and off station; the length of time duty requires the pilot’s absence away from home; the difficulty of the particular service including working conditions; risk factors of the route; inconvenience and living conditions; the skill and additional expertise required to render the particular service; the length of the training, experience, or apprenticeship program; and the number of trips the pilot is required to ride light.
(e) Another factor relevant to the determination of reasonable and just fees and rates, including those factors previously considered and determined by the Louisiana Supreme Court, and the national average pilotage cost per mile for state regulated pilots operating in United States ports.
14(2) If any standard for establishing pi-lotage fees and rates set forth herein is not applicable to a particular pilot service, then it shall not be considered in the determination of fees and rates for such service.
Decisions of the fee commission are reached by a majority vote of the members. LSA-R.S. 34:1122(D). “Whenever negotiation of an issue has been requested, in writing, by any two members and a majority of the commission is unable to decide the issue within ninety days of the request for negotiation, any member may certify and file, in writing, the issue with the Louisiana Public Service Commission for expedited adjudication.” Id. Upon such filing, the Louisiana Public Service Commission shall constitute the commission for the purpose of making a decision, which decision shall constitute the decision of the fee commission. LSA-R.S. 34:1122D and 34:1121C. Within ninety days of certification of an issue the Public Service Commission is required to hold hearings where interested members of the fee commission may file and present their evidence and arguments at the same time relative to the issue. LSA-R.S. 34:1122D(2).
Herein, the New Orleans and Baton Rouge Steamship Pilots, Fee Commission (hereinafter NOBRA) met to negotiate a rate increase for the NOBRA pilots from March 15, 1996, through March 15, 2000. The Fee Commission met on the following dates in 1995 to negotiate the rate increase: January 31, February 21, March 3, March 6 and March 9. At the March 9 meeting the Fee Commission, by majority vote, approved a rate proposal submitted by the pilot members of the commission. The proposal became the “Decision of New Orleans-Baton Rouge Steamship Pilots Commission” which purported to establish the fees, rates, and charges for all pilotage services to ships and vessels performed by NOBRA and its members for services rendered from March 15, 1996, through March 15, 2000. The decision also provided:
The New Orleans-Baton Rouge Steamship Pilots Association or its members may enter into agreements with the masters or owners of ships and vessels, agents representing masters or owners of ships and vessels, or other affected entities or their representatives pertaining to pilotage rates, including but not limited to: tasks requiring assignments of more than one pilot simultaneously; requests for the assignment of a pilot or pilots to a vessel during those periods when all the duty pilots have assignments, or have not received proper rest; a change in a vessels’ original ordered destination is requested; or for special services and for the hire of boats and equipment for such rates and for such sums as may be agreed between them, when such agreements are naviga-tionally safe.
15The pilotage fee shall bear as a lien upon the vessel, which hen shah prescribe within one year, should the vessel return to the Port of New Orleans within that time.
Three of the fee commissioners representing the steamship industry together with New Orleans Steamship Association (NOS-SA) filed a petition seeking judicial review of *1389 the Commission’s March 9, 1995 decision. The petition alleges that the Commission’s decision was made in violation of statutory provisions because: (1) the Commission did not issue findings of fact and conclusions of law; (2) the decision is not based upon the factors set forth in LSA-R.S. 34:1122(B) and (C)(1); and (8) the decision allows pilots to negotiate fees with ship owners in violation of LSA-R.S. 34:1123.
The petition was filed the same day that notice issued for a meeting of the Fee Commission to be held on April 3,1995. Thereafter the Fee Commission, pursuant to majority vote, met on April 3, 1995, to correct mathematical errors in its March 9, 1995 decision. The plaintiffs in the original suit filed a second petition seeking judicial review of the April 3, 1995 decision of the Fee Commission. The second petition for judicial review reasserts the same allegations as the first petition in addition to alleging that the Commission had no authority or jurisdiction to issue its April 3, 1994 decision modifying its March 9 decision because the time for applying for reconsideration, set forth in LSA-R.S. 49:959, had expired. The petition further alleges that the April 3,1995 meeting of the commissioners was held without proper notice. The two suits were later consolidated.
A hearing was held in the district court to consider exceptions of no cause of action/lack of subject matter jurisdiction and no right to judicial review filed by the Fee Commission.[2] The trial court overruled the exceptions and ordered the record of the Fee Commission filed within 30 days. On September 8, 1995, after oral argument and submission of the case, the trial court, for oral reasons assigned, dismissed the suits finding that the parties had no right to judicial review under the Administrative Procedures Act. On September 21, 1995, judgment was signed affirming the decision of the Fee Commission. Although there is an inconsistency in the trial court’s rulings, it does not affect our review of this matter.
leThe plaintiffs have appealed the trial court judgment alleging the following assignments of error:
1. The District Court committed legal error in holding that a decision issued by a pilotage fee commission is not subject to the LAPA (Louisiana Administrative Procedures Act).
2. The District Court committed legal error in holding that a pilotage fee commission decision that establishes fees and rates for pilotage services need not contain findings of fact and conclusions of law.
3. The District Court committed legal error in holding that there exist no appeal rights from a decision of a pilotage fee commission.
4. The District Court committed legal, error in holding that a pilotage fee commission decision that abrogates the commission’s exclusive jurisdiction and authority to establish pilotage fees and rates does not render such a decision arbitrary, capricious, and in excess of the commission’s statutory authority.
APPEAL OF FEE COMMISSION DECISION
The right to judicial review of fee commission decisions is set forth in LSA-R.S. 34:1127 which provides that “[pjroceed-ings may be brought before the courts of competent jurisdiction under state law for the purpose of contesting the validity of any decision of the commission hereunder.” This provision clearly sets forth a broad right to judicial review of any agency decision and, being more specific, takes precedence over the APA rules governing appeal rights. See Matter of American Waste and Pollution Control Co., 93-3163 (La. 9/15/94), 642 So.2d 1258.
Generally, the decisions of rate-making agencies are entitled to great weight and should be upheld unless they are manifestly erroneous or arbitrary and capricious. Gulf States Utilities v. PSC, 578 So.2d 71 (La.1991), cert. denied, 502 U.S. 1004, 112 S.Ct. 637, 116 L.E.2d 655, and Liberty Mutual Insurance v. Insurance Rating Commission, 589 So.2d 70 (La.App. 1st Cir.1991), writ denied, 590 So.2d 597 (La.1992). The *1390 manifest error doctrine relates only to factual findings of the trier of fact and has no application to conclusions of law or public policy. Liberty Mutual Insurance, 589 So.2d 70.
The Fee Commission is charged with fixing and establishing reasonable and just fees and rates. Furthermore, it is legislatively mandated to consider the pilots’ ordinary and necessary operating and administrative costs and expenses as outlined in LSA-R.S. 34:1122jB.7 and the “fair average annual compensation for a state ship pilot, in comparison to regulated state ship pilotage in other United States ports.” LSA-R.S. 34:1122B. The Fee Commission may also consider the factors set forth in LSA-R.S. 34:1122C.
Review of contested rate setting cases generally involves complex issues unique to the industry involved. Hence,- in order for a reviewing court to determine whether the agency acted reasonably and in accordance with law, the agency generally is required to make basic findings supported by evidence and ultimate findings which follow rationally from the basic findings; it must also articulate a rational connection between the facts found and the rates fixed. Giallanza v. Louisiana Public Service Commission, 412 So.2d 1369 (La.1982). However, where the findings and reasons for the agency’s action are necessarily implied by the record, and where the record readily yields sufficient evidence to support the agency determination, the courts will not remand for the formality of having the agency make explicit its findings. Id.
In Giallanza, the court set forth the following guidelines for a decision of the Public Service Commission setting pilots rates:
[A] rate order establishing a pilot fee schedule should include findings supported by evidence of basic facts such as the phots’ total revenues, expenses and investments during the test year; the phots’ average annual earnings during the test year; the phots’ estimated revenues, expenses, investments and average earnings for future year; the phots’ work schedules and working conditions; the supply and demand for photage services; and any other basic facts affecting the maintenance of efficient, economical and reliable photage service. The order should include findings of ultimate facts, flowing from the basic findings, as to the fair average annual compensation for a phot operating under similar working conditions and the rates necessary to produce such a return after subtracting legitimate expenses and a fair return on any capital investment of the pilots. Finally, the. order should articulate reasons showing that there is a rational relationship between the rates fixed, the ultimate facts inferred, and the basic facts found and supported by evidence. A statement of reasons must be adequate to enable the court to determine whether the agency decision was reached for an impermissible reason or for no reason at all.
Giallanza, 412 So.2d at 1374. We see no reason to differentiate between decisions of the Public Service Commission and the Phot Fee Commissions with regard to requiring the agency to explain the basis of its decision.
|8The decision of the NOBRA Fee Commission herein is devoid of any findings of fact or supporting evidence. Furthermore, our review of the record does not reveal with any clarity the path taken by the Commission other than the attempt to establish parity of annual compensation between NOBRA and the BAR phots. Although parity of annual compensation among the Mississippi River Phots is a legitimate consideration, we are unable to discern from this record whether the Commission provided for any differences between the two phot groups. Compare, Hayden v. Louisiana Public Service Commission, 512 So.2d 370 (La.1987).[3]
We conclude the record of this Fee Commission decision is inadequate for purposes of judicial review. Because of the nature of the case and the importance of an expeditious termination of the litigation, we will not remand the case but instead order the NO-BRA Fee Commission to file in this court, *1391 within thirty days, a statement of the grounds of its decision and the essential facts upon which its inferences are based. This order applies to the March 9, 1995 decision and the amendments thereto made on April 3, 1995. We will continue in effect the rate order during the pendency of this appeal.
NEW ORLEANS BATON ROUGE STEAMSHIP PILOTS FEE COMMISSION ORDERED TO PILE FINDINGS AND REASONS.

. For an interesting history of the Bar pilots see Hendrix v. Louisiana Public Service Commission, 262 La. 420, 263 So.2d 343 (1972).

. The Fee Commission filed additional exceptions; however, it later withdrew the exceptions.

. Because we find that the Fee Commission is required to make findings of fact and conclusions of law for purposes of judicial review we preter-mit discussion of plaintiff's contention that the Fee Commission is required to make findings of fact and conclusions of law under LSA-R.S. 49:958 of the Administrative Procedures Act.