laWATKINS, Judge.
This appeal is before us again after having been remanded to the New Orleans Baton Rouge Steamship Pilots Fee Commission (Commission) for findings of fact and conclusions in support of its decision. See Hayden v. NOBR, 680 So.2d 1385 (La.App. 1st Cir. 1996). The Commission met on October 25, 1996, and a five member majority[1] signed a response to this court’s order entitled: “IN RE: Findings of Fact and Statement of Grounds/Certification of Negotiation By Members of the New Orleans-Baton Rouge Steamship Pilots Fee Commission under the provisions of R.S. 34:1121, et seq[.] pertaining to the negotiated tariff of 1995-2000 as to pilotage rates” (hereinafter referred to as “Reasons”). The remaining four industry commissioners also signed a response to this court’s order entitled: “Response of New Orleans-Baton Rouge Steamship Pilots Fee Commission to order of the court rendered September 27, 1996.”
The remaining issues from the original hearing in this appeal are:
1. Whether the district court erred in holding that a decision issued by a pilotage fee commission is not subject to the LAPA (Louisiana Administrative Procedures Act).
2. Whether the district court erred in failing to find that the pilot fee commission decision was arbitrary, capricious and in excess of the commission’s statutory authority.
The issues presented after remand are:
1. Whether a fee commission member, who has been convicted of a felony, may participate in the Commission’s findings of fact and conclusions of law.[2]
*82 2. Whether the findings of fact and conclusions of law are supported by the evidence of record in this appeal.
18ADMINISTRATIVE PROCEDURE ACT
The LAPA, LSA-R.S. 49:950, et seq., enunciates general procedural rules for administrative agencies. These rules are “not intended to supersede the specific provisions of other administrative acts or to supersede the rights and remedies created under those acts. Instead, it was intended to create procedures in those instances where none existed.” Corbello v. Sutton, 446 So.2d 301, 303 (La.1984). Furthermore, this interpretation comports with the generally accepted rule that “[w]hen two statutes are in conflict, the statute that is more specifically directed to the matter at issue must prevail as an exception to the statute that is more general.” Smith v. Cajun Insulation, Inc., 392 So.2d 398, 402 (La.1980). Accordingly, the LAPA rules apply to all agencies as defined in LSA-R.S. 49:951(2), unless excepted by the statutes or constitutional provisions governing each individual agency.
“Agency” is defined in LSA-R.S. 49:951(2) as follows:
“Agency” means each state board, commission, department, agency, officer, or other entity which makes rules, regulations, or policy, or formulates, or issues decisions or orders pursuant to, or as directed by, or in implementation of the constitution or laws of the United States or the constitution and statutes of Louisiana, except the legislature or any branch, committee, or officer thereof, any political subdivision, as defined in Article VT, Section 44 or the Louisiana Constitution, and any board, commission, department, agency, officer, or other entity thereof, and the courts.
Under this definition, the Commission is clearly an “agency” because, by virtue of its authority under LSA-R.S. 34:1122 and 1125, it may make rules, regulations and policies in addition to formulating and issuing orders. Accordingly, in the absence of constitutional or statutory provisions or properly promulgated agency rules, the Commission is required to follow the LAPA.
Although the Commission is vested with authority to adopt rules of procedure, it chose not to do so, and therefore the Commission is governed by the statutory provisions set forth in LSA-R.S. 34:1121-1127 and, for situations not covered therein, by the rules of the LAPA. Carbello, 446 So .2d at 301.
Because there is no specific legislation governing review of pilot fee commission decisions, our review of this matter is governed by the provisions of LSA-R.S. 49:964, more specifically, Section G. which provides:
|4(G). The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
(1) In violation of constitutional or statutory provisions;
(2) In excess of the statutory authority of the agency;
(3) Made upon unlawful procedure; ■
(4) Affected by other error of law;
(5) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
(6) Manifestly erroneous in view of the reliable, probative, and substantial evidence on the whole record....
Furthermore, as stated in our original opinion, the decisions of ratemaking agencies are entitled to great weight and should be upheld unless they are manifestly erroneous or arbitrary and capricious. Gulf States Utilities v. Public Service Commission, 578 So.2d 71 (La.1991), cert. denied, 502 U.S. 1004, 112 S.Ct. 637, 116 L.Ed.2d 655 (1991) and Liberty Mutual Insurance v. Insurance Rating Commission, 589 So.2d 70 (La.App. 1st Cir.1991), writ denied, 590 So.2d *83 597 (La.1992). The manifest error doctrine relates only to factual findings of the trier of fact and has no application to conclusions of law or public policy. Liberty Mutual Insurance, 589 So.2d at 70.
REVIEW OF PILOT FEE COMMISSION DECISION
The Commission is charged with fixing and establishing reasonable and just fees and rates. Furthermore, it is legislatively mandated to consider the pilots’ ordinary and necessary operating and administrative costs and expenses as outlined in LSA-R.S. 34:1122 B and the “fair average annual compensation for a state ship pilot, in comparison to regulated state ship pilotage in other United States ports.” LSA-R.S. 34:1122 B. The Commission may also consider the factors set forth in LSA-R.S. 34:1122 C.
In order to perform its duty the Commission is vested with authority to “adopt rules of procedure and by-laws and elect officers, other than the chairman.” LSA-R.S. 34:1125. The Commission is further vested with the authority to “hold hearings, subpoena witnesses, administer oaths, take depositions, fix fees, and mileage of witnesses, compel the attendance of witnesses, and assess the cost of all hearings and expenses incurred by the commission equally on the pilot association to which it relates and the shipping industry.” LSA-R.S. |s34:1122 A(2). LSA-R.S. 34:1125 also provides that the chairman shall call meetings of the Commission, or special meetings may be called on written notice to the members, signed by any two members thereof and that all actions of the Commission shall be by majority vote of all members.
In the instant ease, the Commission has chosen not to promulgate any rules of procedure and is without a chairman.[3] Furthermore, the Commission meetings to negotiate the pilot fees were not conducted in a traditional format, such as questioning of witnesses under oath. Instead, the pilot commissioners and the industry commissioners each presented a proposal based upon data collected at previous unrecorded committee meetings. The proposals were discussed and changed several times during the meeting. The meeting was actually a round table discussion without witnesses or the administration of oaths. To compound matters, many of the ultimate facts presented during the meeting by the commissioners were merely conclusions without supporting facts or documentation. Although the commissioners agreed on some facts at various points during the discussions, the meetings were conducted in such a manner that it is difficult if not impossible for us to discern exactly what facts the commissioners agreed upon at the conclusion of the meeting. We remanded the matter for a statement of reasons, in hopes that the path taken by the Commission would become clearer. Unfortunately, the Reasons confirmed our initial assessment that the record lacks an evidentiary basis for the Commission’s decision and is thus manifestly erroneous. We further believe that the decision was in violation of statutory provisions and in excess of the statutory authority of the agency.
As we explained in our original opinion, LSA-R.S. 34:1122 mandates that the Commission consider the factors enumerated therein. This duty was further explained in Giallanza v. Louisiana Public Service Commission, 412 So.2d 1369, 1374 (La.1982), wherein the court stated:
[A] rate order establishing a pilot fee schedule should include findings supported by evidence of basic facts such as the pilots’ total revenues, expenses and investments during the test year; the pilots’ average annual earnings during the test year; the pilots’ estimated revenues, expenses,_[6investments and average earnings for future year; the pilots’ work schedules and working conditions; the supply and demand for pilotage services; and any other basic facts affecting the maintenance of efficient, economical and reliable pilotage service. The order should include findings of ultimate facts, flowing *84 from the basic findings, as to the fair average annual compensation for a pilot operating under similar working conditions and the rates necessary to produce such a return after subtracting legitimate expenses and a fair return on any capital investment of the pilots. Finally, the order should articulate reasons showing that there is a rational relationship between the rates fixed, the ultimate facts inferred, and the basic facts found and supported by evidence. A statement of reasons must be adequate to enable the court to determine whether the agency decision was reached for an impermissible reason or for no reason at all.
The record herein fails to contain evidence supporting the Commission’s decision. This deficiency is made evident when reviewing the Reasons submitted by the majority members of the Commission. Instead of stating a basic fact from which ultimate facts were found, the Reasons are replete with statements such as “[W]ith respect to 1122(B) the entire Fee Commission discussed actual expenses, depreciation, revenue, manpower, retirement, flat line expenses, cost estimates, and the like.” The Commission’s Reasons do not provide ultimate facts, nor do they explain a rational relationship between the rates fixed, and the ultimate facts inferred. The majority of commissioners have attempted to introduce evidence in this appeal that was not made a part of the record of the Commission meetings. However, we cannot consider evidence that is not part of the appeal record. LSA-C.C.P. art. 2164; Guedry v. Fromenthal, 633 So.2d 287 (La. App. 1st Cir.1993).
We further find that the Commission decision is in violation of LSA-R.S. 34:1122 because it provides that the pilots may enter into agreements with ship masters or vessel owners pertaining to pilotage rates. The Commission order specifically provides that “[t]he New Orleans-Baton Rouge Steamship Pilots Association or its members may enter into agreements with the masters or owners of ships and vessels, agents representing masters or owners of ships and vessels, or other affected entities or other affected entities or their representatives pertaining to pilotage rates....” Appellants contend the Commission decision is an illegal delegation of the Commission’s rate setting authority because LSA-R.S. 34:1122 grants to the Commission “exclusive authority to fix and establish reasonable and just fees and rates.” Furthermore, LSA-R.S. 34:1123 provides that “[a]ll pilot associations may enter into agreements with the masters or owners of ships and vessels, or agents representing them, |7pertaining to pilotage rates, or for special services and for the hire of boats and equipment for such rates and for such sums as may be agreed between them.”
Neither LSA-R.S. 34:1122 nor 34:1123 provides authority for a member pilot to enter into agreements with masters or owners of ships or vessels. Accordingly, the decision of the Commission granting this authority is clearly in violation of the statutory provisions governing the fixing of rates and fees for pilot services.
For the reasons expressed, we vacate the order of the Commission and remand this matter to the Commission for reconsideration of the 1995-2000 fee schedule consistently with the views expressed in this and our previous opinion.
ORDER VACATED AND CASE REMANDED.

. The four pilot commissioners and Mr. Landon Alexander, an industry commissioner, presented the commission with a proposed response to this court’s order. The remaining commissioners refused to accept the proposed response. Only the proposing commissioners signed the proposal as the findings of the Commission.

. Prior to the October 25 meeting, one of the four industry commissioners, Mr. Landon Alexander, Jr., pled guilty to a felony, an action which automatically suspended him from the Commission. See LSA-R.S. 42:1411. On Octo-her 17, 1996, the governor appointed Mr. Clifton St. Pierre to replace Mr. Alexander on the Commission. Notwithstanding the appointment of a new commissioner, Mr. Alexander participated in and signed the findings of fact and conclusions of law which the Commission submitted in this matter. The industry commissioners objected to Mr. Alexander's participation at the meeting of the Commission and also filed an objection in this appeal arguing that a majority of the NO-BRA Commission did not vote to adopt the findings of fact and conclusions of law submitted to *82 this court. Although we believe there is merit to the appellants' argument regarding, Mr. Alexander’s participation in this matter, after remand, we need not reach that issue because of our disposition of the remaining issues.

. During the original meeting in this matter, commissioners discussed electing a chairman. However, industry commissioner, Mr. Hayden, stated: "[W]e can’t. That has hassled out about 25 years ago. It was rejected back then by both sides.”