707 So.2d 3 (1998)
Channing F. HAYDEN, Jr., George E. Duffy, Richard E. Manchester and New Orleans Steamship Association
v.
NEW ORLEANS BATON ROUGE STEAMSHIP PILOTS FEE COMMISSION.
No. 97-C-1239.
Supreme Court of Louisiana.
January 21, 1998.
*4 Jack M. Capella, David J. Motter, Larry S. Bankston, George M. Cotton, Robert A. Barnett, Hoffman, Sutterfield, Ensenat, Guste, Barnett & Shushan, Baton Rouge, for Applicant.
Benjamin R. Slater, Jr., New Orleans, Anne E. Brown, Baton Rouge, for Respondent.
Walter H. Drake, Jr., for amicus curiae New Orleans-Baton Rouge Steamship Pilots Ass'n.
Michael R. Delesdernier, Metairie, for amicus curiae Crescent River Port Pilot.
Kenneth M. Wright, Lake Charles, for amicus curiae Lake Charles Pilots Inc.
Edward J. Koehl, Jr., Scott A. Decker, New Orleans, for amici curiae Archer-Daniels-Midland Company and ADM/Growmark River System.
Carmack M. Blackmon, Baton Rouge, for amicus curiae Louisiana Railroad Ass'n.
Neal D. Hobson, Sergio J. Alarcon, New Orleans, for amici curiae Louisiana Association of Business, Louisiana Division Mid Con. Oil and Gas, International Freight, Customs Brokers Ass'n of New Orleans and Chamber of New Orleans River Region.
Charles S. McCowan, Jr., Maureen N. Harbourt, Baton Rouge, M.S. Johnson, for amicus curiae Louisiana Chemical Ass'n.
KNOLL, Justice.[1]
The issue before us is whether a majority decision of the pilotage fee commission is subject to the Louisiana Administrative Procedures Act (LAPA), La.R.S. 49:950, et seq. The trial court concluded that LAPA did not apply and, accordingly, it affirmed the majority decision of the Fee Commission. On appeal by the New Orleans Steamship Association and three industry-commissioners (the industry plaintiffs), the Court of Appeal, First Circuit, ultimately reversed the trial court and determined that because there is no specific legislation governing review of pilots' fee commission decisions, review of such matters was governed by the provisions of LAPA. Hayden v. New Orleans Baton Rouge S.S. Pilots Fee Comm'n, 96-0062 (La. App. 1 Cir. 1/8/97), 690 So.2d 79. We granted a writ of certiorari to determine the res nova question of whether LAPA is applicable to majority decisions of the pilots fee commission. 97-1239 (La.9/19/97), 701 So.2d 178. For reasons which follow, we conclude that the New Orleans and Baton Rouge Steamship Pilots Fee Commission (Fee Commission) is not bound to comply with LAPA.

BACKGROUND
A long, well-settled line of jurisprudence charts the history of bar pilots in Louisiana.[2] As noted in Kotch v. Board of River Port Pilot Com'rs for Port of New Orleans, 330 U.S. 552, 67 S.Ct. 910, 91 L.Ed. 1093 (1947), "studies of the long history of pilotage reveal that it is a unique institution and must be judged as such." Id. at 557, 67 S.Ct. at 912-13.
Since the days of early development of colonies in North America, river pilots have aided ships in their passage through the Mississippi River approaches to the Port of New Orleans, northward to the Port of Baton Rouge. Because of the essential need to prevent traffic congestion and accidents on the river, the legislature first imposed regulations on the pilots in 1837. Hendrix v. *5 Louisiana Public Service Commission, 262 La. 420, 263 So.2d 343 (1972). In accord with this spirit, the legislature established three distinct pilot associations which have the exclusive right to provide river pilot services to vessels from the time they enter the Mississippi River from the Gulf of Mexico until they reach the Port of Baton Rouge. La.R.S. 34:943 provides that bar pilots have the exclusive right to provide services on the Mississippi River between Pilot Town and the Gulf of Mexico. River port pilots, generally called Crescent Pilots, assist vessels between Pilot Town and New Orleans. La.R.S. 34:996. The New Orleans Baton Rouge Association pilots (NOBRA), the third association of Mississippi river pilots, provide exclusive pilot services between New Orleans and Baton Rouge. La.R.S. 34:1043. In conformity with La.R.S. 34:944, 34:995, and 34:1047, the three pilot groups each formed a pilot association. The associations determine, inter alia, the pilots' working conditions by establishing the rules and regulations for such things as vacations, sick leave, and rest time.
After examination and certification by boards of examiners for each association of pilots, the governor, at his discretion, appoints river pilots. La.R.S. 34:945, 34:993, 34:1045. Before the creation of the fee commissions, the legislature regulated the fees that the pilots were permitted to charge for their services. See repealed provisions in La.R.S. 34:997 999. However, in 1968, the state legislature disburdened itself of their authority and created pilot fee commissions, giving these commissions the authority to fix rates and fees for pilot services. La.R.S. 34:1121, et seq. Each commission is comprised of eight members and eight alternates commissioned by the governor to represent the respective interests of the pilot associations and the steamship industry; the boards of directors from the pilot associations recommend four members and four alternates and the steamship industry recommends a like number of members and alternates. Id. Each fee commission "shall have exclusive authority to fix and establish reasonable and just fees and rates...." La.R.S. 34:1122. (Emphasis added). To assist the fee commissions in their determinations of rates La. R.S. 34:1122(B)[3] and (C) provide:
B. Pilotage fees and rates shall provide for all ordinary and necessary operating and administrative costs and expenses, including, but not limited to, the cost of, replacement of, and reasonable return on investment of pilot stations, administrative offices, furniture and fixtures, communication equipment and facilities, vessels, launches and other required vehicles of transportation and the expenses of maintaining and repairing same, other transportation expenses, the expense of maintaining necessary employees, operating materials, consumables and services, pensions, pension plans, hospitalization, disability compensation, taxes and licenses, life insurance, license insurance, trade promotions, public relations, legal expense, accounting expense, professional dues, administrative and professional publications, state pilot commissions, state and federal requirements, and fair average annual compensation for a state ship pilot, in comparison to regulated state ship pilotage in other United States ports.
C. (1) In determining such fees and rates, individual pilotage fee commissions may give due regard to, but shall not be limited to:
(a) Consideration of the length, draft, dimensions, and tonnage of the vessels to be piloted.
(b) The difficulty and inconvenience of the particular service and the skill and additional expertise required to render it.
(c) The public interest in maintaining safe, efficient, and reliable pilotage service.
(d) The piloting time required; the distance traveled of the vessels to be serviced; the travel time required and distance traveled to and from vessels; the method of travel and travel cost required to and from vessels; the time devoted by *6 pilots to making themselves available when needed; the time required to be on station or on call while both on and off station; the length of time duty requires the pilot's absence away from home; the difficulty of the particular service including working conditions; risk factors of the route; inconvenience and living conditions; the skill and additional expertise required to render the particular service; the length of the training, experience, or apprenticeship program; and the number of trips the pilot is required to ride light.
(e) Another factor relevant to the determination of reasonable and just fees and rates, including those factors previously considered and determined by the Louisiana Supreme Court, and the national average pilotage cost per mile for state regulated pilots operating in United States ports.
(2) If any standard for establishing pilotage fees and rates set forth herein is not applicable to a particular pilot service, then it shall not be considered in the determination of fees and rates for such service.
The legislative enactment further provides for two decision-making eventualities which may arise from negotiations among the members in the respective fee commissions. First, a decision by the majority of the members of the fee commission shall constitute the decision of the commission. La.R.S. 34:1122(D). Should the validity of any majority decision of the commission be attacked, "[p]roceedings may be brought before courts of competent jurisdiction under state law...." La.R.S. 34:1127. It is this scenario which we are faced with in this opinion.
The second instance envisioned by the legislature encompasses those times when neither the pilot commissioners nor the steamship commissioners are able to muster a majority vote.[4] In this latter instance, La. R.S. 34:1121(C) provides, in pertinent part:
[I]n the event that the members representing the interest of the association and the members representing the interests of the steamship industry are unable to resolve any dispute as to pilotage fees and rates or any other legitimate business of the commission, the Louisiana Public Service Commission shall constitute the commission for the purpose of making a decision relative to the dispute, which decision of the Louisiana Public Service Commission shall constitute the decision of the fee commission.
(Emphasis added).
In like manner, La.R.S. 34:1122(D) provides, in pertinent part:
Whenever negotiation of an issue has been requested, in writing, by any two members and a majority of the commission is unable to decide the issue within ninety days of the request for negotiation, any member may certify and file, in writing, the issue with the Louisiana Public Service Commission for expedited adjudication.

Id. (Emphasis added).
Within ninety days of certification of an issue the Public Service Commission is required to hold hearings where interested members of the fee commission may file and present their evidence and arguments at the same time relative to the issue. La.R.S. 34:1122(D)(2).

FACTS AND PROCEDURAL HISTORY
In the case sub judice, the New Orleans and Baton Rouge Steamship Pilots' Fee Commission began negotiation of a rate increase for their pilots for the period beginning March 15, 1996, extending through March 15, 2000. The Fee Commission met on the following dates in 1995 to negotiate the rate increase: January 31, February 21, March 3, March 6 and March 9.[5] At the *7 March 9 meeting the Fee Commission, by majority vote, approved a rate proposal submitted by the pilot members of the commission. The proposal became the "Decision of New Orleans-Baton Rouge Steamship Pilots Commission" which purported to establish the fees, rates, and charges for all pilotage services to ships and vessels performed by the Fee Commission and its members for services rendered from March 15, 1996, through March 15, 2000. The decision also provided:
The New Orleans-Baton Rouge Steamship Pilots Association or its members may enter into agreements with the masters or owners of ships and vessels, agents representing masters or owners of ships and vessels, or other affected entities or their representatives pertaining to pilotage rates, including but not limited to: tasks requiring assignments of more than one pilot simultaneously; requests for the assignment of a pilot or pilots to a vessel during those periods when all the duty pilots have assignments, or have not received proper rest; a change in a vessels' original ordered destination is requested; or for special services and for the hire of boats and equipment for such rates and for such sums as may be agreed between them, when such agreements are navigationally safe.
The pilotage fee shall bear as a lien upon the vessel, which lien shall prescribe within one year, should the vessel return to the Port of New Orleans within that time.
Subsequently, the industry plaintiffs[6] filed a petition in the Nineteenth Judicial District Court, seeking to set aside the Fee Commission's March 9, 1995, majority decision since the majority decision was not made according to LAPA procedure. The petition alleged that the Fee Commission: (1) failed to issue findings of fact and conclusions of law as required by LAPA to support consideration of the mandatory factors enumerated in La.R.S. 34:1122(B) and the permissive factors listed in La.R.S. 34:1122(C)(1); and (2) issued a tariff which, in part, allowed pilots to negotiate fees with ship owners independent of the Fee Commission, in violation of La. R.S. 34:1123.
At the same time that the petition was filed, notice issued for a meeting of the Fee Commission to be held on April 3, 1995. The Fee Commission, pursuant to majority vote, met on April 3, 1995, to correct mathematical errors in its March 9, 1995, decision. Thereafter, the industry plaintiffs in the original suit filed a second similar petition as to the April 3, 1995, decision of the Fee Commission. The second petition reasserted the allegations made in the first petition, and further alleged: (1) that the Commission had no authority or jurisdiction to issue its April 3, 1995, decision modifying its March 9 decision because the time for applying for reconsideration, set forth in La.R.S. 49:959, had expired; and (2) that the April 3, 1995, meeting of the commissioners was held without proper notice. The two suits were later consolidated.
A hearing was held in the district court to consider exceptions filed by the Fee Commission of no cause of action, lack of subject matter jurisdiction and no right to judicial review. After overruling the exceptions, the *8 trial court ordered the record of the Fee Commission filed within 30 days. On September 8, 1995, after hearing oral argument, the trial court affirmed the decision of the Fee Commission, finding that the plaintiffs had no right to judicial review under the Administrative Procedures Act and that the Fee Commission had not improperly delegated rate making authority to its pilots when masters and vessel owners needed the pilots to perform "special services." On September 21, 1995, judgment was signed affirming the decision of the Fee Commission. The industry plaintiffs then perfected an appeal to the Court of Appeal, First Circuit.
In Hayden v. New Orleans Baton Rouge S.S. Pilots Fee Com'n, 96-0062 (La.App. 1 Cir. 9/27/96), 680 So.2d 1385 (Hayden I), the Court of Appeal, First Circuit, held: (1) La. R.S. 34:1127[7] provides a specific right to judicial review that takes precedence over the LAPA rules regarding appeal rights; and (2) that following Giallanza v. Louisiana Public Service Commission, 412 So.2d 1369 (La.1982), the Fee Commission "is required to make basic findings supported by evidence and ultimate findings which follow rationally from the basic findings; it must also articulate a rational connection between the facts found and the rates fixed." Id. at 1390. After concluding that the Fee Commission was required to make findings of fact and conclusions of law to insure meaningful judicial review, the appellate court pretermitted the question of whether LAPA applied. Id. fn. 3 at 1390.[8] Instead, it decided that a remand to the Fee Commission was required "to file ... a statement of the grounds of its decision and the essential facts upon which its inferences are based." Id. at 1391.
Following the decision in Hayden I, the Fee Commission met on October 25, 1996, but a majority of the eight-member commission could not agree on a statement of the grounds for its decision and the essential facts on which the decision was based. Notwithstanding, the four pilot commissioners and a former industry commissioner, who had been on the commission when the rate increase was adopted on March 9, 1995, responded to the appellate court with its version of the findings of fact and reasons for the decision.[9] A review of the record further shows that the four industry commissioners submitted a like document.
In the appeal after remand, Hayden v. New Orleans Baton Rouge S.S. Pilots Fee Com'n, 690 So.2d 79 (Hayden II), the Court of Appeal, First Circuit, ruled that: (1) the Fee Commission is an "agency" as defined in La.R.S. 49:951(2);[10] (2) because there is no specific legislation governing review of pilot fee commission decisions, the provisions of La.R.S. 49:964(G) are applicable;[11] (3) relying *9 on Giallanza, supra, the Fee Commission must state ultimate facts and explain "a rational relationship between the rates fixed, and the ultimate facts inferred;" and (4) that portion of the Fee Commission's ruling which provided that pilots may enter into rate agreements with ship masters and vessels for special services contravened the exclusive authority granted to the Fee Commission in La.R.S. 34:1122. Id. at 84. On this basis, the appellate court vacated the order of the Fee Commission and remanded the matter to them for reconsideration of the 1995-2000 fee schedule for reassessment in conformity with its opinion. This writ application followed on behalf of the Fee Commission.

DISCUSSION
The Fee Commission contends that the appellate court erred in finding LAPA applicable to its decision-making process.[12] On the other hand, the industry plaintiffs assert that the Fee Commission's argument is interjected solely to distract attention from the real issue, i.e., the need for determined facts to support judicial review. To this effect, they argue that the appellate court only referenced the provisions of La. R.S. 49:964 in LAPA to assess the ultimate rate-making decision of the Fee Commission. They further argue that the Giallanza decision established that a statement of facts was needed to provide effective judicial review.
From the outset we find that the industry plaintiffs greatly understate the findings of the appellate court. To exemplify this understatement, we quote from Hayden II:
In the instant case, the Commission has chosen not to promulgate any rules of procedure and is without a chairman. Furthermore, the Commission meetings to negotiate the pilot fees were not conducted in a traditional format, such as questioning of witnesses under oath. Instead, the pilot commissioners and the industry commissioners each presented a proposal based upon data collected at previous unrecorded committee meetings. The proposals were discussed and changed several times during the meeting. The meeting was actually a round table discussion without witnesses or the administration of oaths. To compound matters, many of the ultimate facts presented during the meeting by the commissioners were merely conclusions without supporting facts or documentation.
Hayden II, 690 So.2d at 83. (Footnote omitted).
We find that this assessment of the appellate court provides both a springboard for our discussion of the matter at hand and an illustration of the appellate court's misunderstanding of the basic structure and function of the Fee Commission.
In Hayden II, the appellate court concluded that the Fee Commission fell within LAPA's definition of "agency." From that flawed premise, it then concluded that proposed findings of fact were required, and that the provisions of La.R.S. 49:964(G) were applicable. After reviewing the various provisions of LAPA, we find that the appellate court erred as a matter of law in its conclusion that LAPA's provisions were applicable.
Agency is defined in La.R.S. 49:951(2) as follows:
"Agency" means each state board, commission, department, agency, officer, or other entity which makes rules, regulations, or policy, or formulates, or issues decisions or orders pursuant to, or as directed by, or in implementation of the constitution or laws of the United States or the constitution *10 and statutes of Louisiana, except the legislature or any branch, committee, or officer thereof, any political subdivision, as defined in Article VI, Section 44 or the Louisiana Constitution, and any board, commission, department, agency, officer, or other entity thereof, and the courts.
Although it cannot be denied that the Fee Commission is a "commission" appointed by the governor, the statutory definition requires the conclusion that it is necessary that the Fee Commission will only be considered an "agency" for purposes of LAPA if it "makes rules, regulations, or policy, or formulates, or issues decisions or orders...."
La.R.S. 49:951, the definitional portion of LAPA, provides, in part:
As used in this Chapter:
(1) "Adjudication" means agency process for the formulation of a decision or order.
* * * * * *
(3) "Decision" or "order" means the whole or any part of the final disposition (whether affirmative, negative, injunctive, or declaratory in form) of any agency, in any matter other than rulemaking, required by constitution or statute to be determined on the record after notice and opportunity for an agency hearing, and including non-revenue licensing, when the grant, denial, or renewal of a license is required by constitution or statute to be preceded by notice and opportunity for hearing.
To summarize, LAPA provides that an adjudication is a proceeding resulting in an order or decision. For purposes of the act, a decision or order is a disposition required by the constitution or statute to be made only after notice and a hearing. Therefore, unless the constitution or statutes requires a hearing, an agency disposition is not a "decision" or "order" as defined for purposes of LAPA. Moreover, unless a proceeding results in a decision or order, it is does not meet the definition of an adjudication as provided in LAPA. Accordingly, it is evident that an adjudication for purposes of LAPA means that an agency proceeding has occurred that results in a disposition which is preceded by notice and a hearing as required by the constitution or statute. It is clear that unless a statute or the constitution requires a hearing and notice, an agency action is not an adjudication; therefore, the provisions of LAPA are not triggered in these instances.
Applying this criteria to the present case, it is readily apparent that the Fee Commission is not an "agency" for purposes of LAPA. As provided in the legislation which created it, the Fee Commission "resolve[s]... dispute[s] as to pilotage fees and rates," La.R.S. 34:1121(C), and negotiates pilotage fees and rates, La.R.S. 34:1122(D). Nowhere in statute or in the constitution is it required that the Fee Commission conduct hearings to effectuate its statutory mandate. Rather, the legislature has created a Fee Commission whose membership is composed equally of experts from the pilots and the steamship industry who have been tasked to discuss proposals and counter-proposals regarding the issue of pilotage fees and rates. It is only when these negotiations reach an impasse that the matter is referred to the Louisiana Public Service Commission for adjudication. Id.
Considering the statutory framework of the Fee Commission, the appellate court's reliance on the Giallanza decision to require a recitation of facts and an articulation of a rational connection between the facts and the rate fixed was misplaced. Giallanza involved an adjudication of the pilotage rates before the Louisiana Public Service Commission after the Fee Commission had reached an impasse. Accordingly, the pronouncements of the Public Service Commission sprang from hearings in which evidence was adduced from the pilots and the steamship industry before a neutral body. Thus, there was a need for a detailed factual recitation since an independent body, other than the pilots and steamship industry, was called upon to reach a decision on the pilotage fees and rates. Therefore, it is readily apparent that the decision-making process at work in Giallanza is strikingly different from that presented herein.
Moreover, contrary to the holding of Hayden II, the legislature has established a mode for judicial review in instances where a *11 majority of the Fee Commission has successfully negotiated a pilotage fee.[13] Should the validity of any majority determination of the Fee Commission be challenged, proceedings may be brought before a court of competent jurisdiction under state law. La.R.S. 34:1127. When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written. La.Civ.Code art. 9. It is clear that in such a proceeding under La.R.S. 34:1127, the validity of the majority decision is at issue. As we appreciate the statute, such proceeding in district court would consider whether the Fee Commission properly initiated the negotiation process, whether the Fee Commission was properly constituted when the vote was taken, and whether the Fee Commission considered the matters mandated in La.R.S. 34:1122(B) and suggested in La.R.S. 34:1122(C) in arriving at the pilotage fees and rates. Through such bareboned review, the requisite authority needed to negotiate a fee would be assured and concern for a well grounded determination would be achieved by referencing the criteria sketched in La.R.S. 34:1122(B) and (C) thus, guarding against an arbitrary and capricious decision. At the same time, such limited review preserves the integrity of the Fee Commission as a negotiating body.
In making this determination, we are mindful of the need for a record which could be reviewed. As pointed out by the appellate court, although the Fee Commission may adopt rules of procedure and by-laws pursuant to La.R.S. 34:1125, it has chosen not to. Nevertheless, our review shows that it is the custom of the Fee Commission to have their meetings recorded by a stenographer and transcribed in due course. A cursory review of the transcription identifies the meeting dates, references any notice that was provided for the meeting dates, times, and places, identifies the commission members present and absent as well as outsiders in attendance, records all discussions and votes, and for the most part refers to exhibits used. Therefore, such transcripts are available and would certainly aid any court, reviewing the validity of a Fee Commission matter.
We find it significant that the industry plaintiffs did not seek judicial review under La.R.S. 34:1127, as provided by the legislature. Rather, its petition seeks the application of LAPA to the Fee Commission for purposes of judicial review. The trial court astutely recognized the industry plaintiffs' position and commented: "... that issue could have been brought under section 1127 and not through administrative procedure appeal." The industrial plaintiffs' petition alleged and prayed that since the decision of the Fee Commission was rendered in violation of LAPA, the Fee Commission's decision was invalid. Its petition does not allege that they are deprived of judicial review, but rather it seeks to change the Fee Commission's procedure so that the requirements of LAPA are met in a judicial review of a majority decision of the Fee Commission. In essence, we perceive the industry plaintiffs' petition as asking us to impose another procedure on the Fee Commission differently from the procedure provided by the legislature. Clearly, this is a matter for the legislature and not our function.

APPLICATION OF LAW
In the present case, the trial court correctly recognized that the validity of the negotiation could be contested under La.R.S. 34:1127, and that once the pilot fees and rates were negotiated they were insusceptible of judicial review under the procedures provided by LAPA. In addition, the trial court reluctantly approved the portion of the rate which allowed pilots to individually negotiate fees for special services. We will address each of these rulings.
A review of the record shows that the industry plaintiffs focused their attack on the failure of the Fee Commission to issue findings of fact and conclusions of law in accordance with the procedure outlined in LAPA. Specifically, they urged the trial court to find that this failure to particularize facts and law was required under LAPA to *12 assess whether the rate determination was based upon the mandatory factors enumerated in La.R.S. 34:1122(B) and whether the permissive factors listed in La.R.S. 34:1122(C) were considered. Although they referenced La. R.S. 34:1122(B) and (C), they did so only for purposes of invoking LAPA and without particularizing any omission from the Fee Commission's consideration. Based upon our ruling that the Fee Commission was not required to follow LAPA, we find that the trial court properly affirmed the decision of the Fee Commission.
Lastly, we consider the particular ruling of the appellate court in Hayden II which found that the Fee Commission exceeded its authority when it allowed pilots to negotiate fees for special services. In argument before us, the Fee Commission contends that such a matter is customary in the industry and was thoroughly discussed during the Fee Commission negotiations.
The Fee Commission order provided, in part:
The New Orleans-Baton Rouge Steamship Pilots Association or its members may enter into agreements with the masters or owners of ships and vessels, agents representing masters or owners of ships and vessels, or other affected entities or their representatives pertaining to pilotage rates, including but not limited to: tasks requiring assignments of more than one pilot simultaneously; requests for the assignment of a pilot or pilots to a vessel during those periods when all the duty pilots have assignments, or have not received proper rest; a change in a vessels' original ordered destination is requested; or for special services and for the hire of boats and equipment for such rates and for such sums as may be agreed between them, when such agreements are navigationally safe.
The pilotage fee shall bear as a lien upon the vessel, which lien shall prescribe within one year, should the vessel return to the Port of New Orleans within that time.
We premise our discussion of this issue of pilots' special services by keeping in mind the uniqueness of the history of pilotage and the complementary understanding that the regulation of pilots has its roots in the essential need to prevent traffic congestion and accidents on the river. Kotch, supra; Hendrix, supra. A review of the negotiations in the present case shows that this special services language of the Fee Commission was never attacked during negotiation. As such, it can be said that this matter was thoroughly considered in the negotiation of fees and was approved by a majority of the commissioners. Thus, it can be said that pilots' special services forms part of the Fee Commission decision and constitutes an authorization for pilot members to negotiate for special services to vessels in aid of navigation and safety. Such a special services agreement was considered by us in Giallanza, supra at 1379, and was not stricken. In this light, we find no error in the trial court's determination of this issue.

DECREE
For the foregoing reasons, we reverse the Court of Appeal, First Circuit, and reinstate the judgment of the trial court.
REVERSED; TRIAL COURT JUDGMENT REINSTATED.
NOTES
[1] Lemmon, J., not on panel. Rule IV, Part 2, § 3.
[2] Kotch v. Board of River Port Pilot Com'rs for Port of New Orleans, et al., 330 U.S. 552, 67 S.Ct. 910, 91 L.Ed. 1093 (1947); Hendrix v. Louisiana Public Service Commission, 262 La. 420, 263 So.2d 343 (1972); Hayden v. Louisiana Public Service Commission, 512 So.2d 370 (La.1987).
[3] La. Act 202 of 1987 amended La.R.S. 34:1122(B) to provide several of the considerations identified in our decisions in Giallanza v. Louisiana Public Service Com'n, 412 So.2d 1369 (La.1982) and Hayden v. Louisiana Public Service Com'n, 512 So.2d 370 (La.1987), as being germane in pilot rate cases.
[4] Although this latter scenario is not presented herein, the language employed by the Legislature in addressing its eventuality illuminates our discussion of the issue at hand.
[5] The Steamship Association and the three industry fee commissioners attached excerpts of the Fee Commission meetings to their petition for review and the Fee Commission purportedly supplemented the record with an extensive transcription. In connection with the record, the appellate court noted in Hayden II that it found extrinsic documents in the record which the Fee Commission had not introduced in the trial court. Hayden II, 690 So.2d at 84. Similarly, we note that the Fee Commission instigated proceedings in the trial court to supplement the record before us after we granted supervisory writs. This motion was contested and resulted in the filing of an extensive, detailed objection to various inclusions found in the purported record of the Fee Commission. Nevertheless, we observe that the trial court was never asked to rule on the efficacy of the purported record and to determine the merits of the objections filed by the Steamship Association and the three industry commissioners. Instead, the trial court ordered that the various filings and objections thereto be forwarded to us so that the record would be complete.

It is axiomatic that where our jurisdiction is only appellate and not original, we cannot receive original evidence or consider documents not introduced or filed in the trial court. DeFrances v. Gauthier, 220 La. 145, 55 So.2d 896 (1951). Accordingly, we are unable to review the filings submitted to us after we granted our writ of certiorari in this matter. Although the Fee Commission references more meetings which purportedly addressed negotiations on the rate issue, we will only refer to the transcription of those meetings attached to the petition for judicial review. Notwithstanding, for purposes of this opinion, our disposition of this case does not depend on the composition, or lack thereof, of the record.
[6] The three industry fee commissioners are Channing F. Hayden, Jr., George Duffy, and Richard Manchester. The other industry plaintiff is the New Orleans Steamship Association.
[7] La.R.S. 34:1127 provides that "[p]roceedings may be brought before courts of competent jurisdiction under state law for the purpose of contesting the validity of any decision of the commission hereunder."
[8] One of the arguments by the industry-commissioners is that the Fee Commission is precluded from raising the issue of the applicability of LAPA because it failed to appeal the decision in Hayden I. After carefully scrutinizing the appellate decision in Hayden I, we find no merit to this argument. As referenced above, the appellate court specifically pretermitted application of LAPA.
[9] There was disagreement among the members of the Fee Commission as to the proper parties to formulate the findings of fact and reasons requested by the appellate court. In the interim between the passage of the rate increase and the remand in Hayden I, the composition of the Fee Commission had changed. Before the October 25, 1996, meeting, Landon Alexander, Jr., one of the four industry commissioners, pleaded guilty to a felony, an action which automatically suspended him from the Fee Commission. La.R.S. 42:1411. Thereafter, on October 17, 1996, the governor appointed Clifton St.Pierre to replace Alexander on the Fee Commission. Even though the governor appointed a new industry-commissioner, the pilot-members of the Fee Commission maintained that Alexander's participation was required because he was a member of the commission when the new tariff was negotiated. Although Alexander signed the findings of fact with the four pilot-members of the Fee Commission on remand from the appellate court, the industry-commissioners objected to Alexander's participation and urge us to uphold their objection to his participation. Because of our disposition of this writ, we do not have to reach this issue.
[10] Agency is defined in La.R.S. 49:951(2) and is referenced in its entirety infra.
[11] La.R.S. 49:964(G) provides, in pertinent part:

The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) In violation of constitutional or statutory provisions; (2) In excess of the statutory authority of the agency; (3) Made upon lawful procedure; (4) Affected by other error of law; (5) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or (6) Manifestly erroneous in view of the reliable, probative, and substantial evidence on the whole record....
[12] The Fee Commission further argues that 1997 Act 1484 specifically exempted the Fee Commissions from the Louisiana Administrative Procedure Act, that it was clarifying and remedial legislation, and that its provisions were applicable retroactively to the case at hand. It is well recognized that we should not address issues that we need not reach. Since we have resolved the issue presented without recourse to Act 1484, we decline to address this additional argument.
[13] A review of Hayden I shows that the appellate court recognized this fact. Hayden, 680 So.2d at 1389.